U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
NOV 18 2026
CLERK, U.S. DISTRICT COURT
By ____ Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

CHRISTIAN ROBERT KOMOR,
Plaintiff, appearing pro se,

v.

APPLIED DIGITAL CORP.,
Defendant.

Case No. 3-26CV4065-K

**COMPLAINT FOR DAMAGES**
**AND INJUNCTIVE RELIEF**
**Personal injury: negligence**
**Demand: $100,000, plus allowable costs**
**Jury Trial Demanded**

## I. INTRODUCTION

1. Plaintiff Christian Robert Komor brings this civil action against Defendant Applied Digital Corp. to obtain injunctive relief and compensatory damages for severe, continuous, and aggravated bodily injury, pulmonary distress, and substantial impairment of health caused by Defendant's unlawful, excessive, and unmitigated industrial operations and local airborne emissions.

2. The challenged conduct concerns Applied Digital Corp.'s own role in Polaris Forge 1 at Ellendale / Dickey County, North Dakota. Applied Digital reported the first 50 MW phase of Polaris Forge 1 in Ellendale ready for service on October 27, 2025. On October 2, 2026 it reported the second phase of Building 2 ready for service, completing that building's 150 MW and bringing the campus's fully operational critical IT load to 250 MW, toward 400 MW contracted at full buildout. The challenged activities are limited to Defendant's own project decisions and conduct within its actual authority or control; another participant's acts are not attributed to Defendant merely because of a shared project. References below to emissions, breach and injury causation are limited to actual conduct and releases attributable to Defendant during its supported period of participation; neither future expansion nor companywide figures are treated as completed site operations.[1]

3. Plaintiff alleges negligent and unreasonable acts and omissions concerning emissions controls, heat rejection and air-quality mitigation in Defendant's own actual project activities. Plaintiff alleges that attributable greenhouse-gas releases contribute to environmental warming and the downstream smoke, ozone and airborne-allergen exposures that aggravate his physical health burden. The allegation of direct local pollutant or thermal-plume exposure from the selected project requires project-specific evidence; it is not inferred solely from a project's power capacity or location. Plaintiff alleges that progressive carbon accumulation and reinforcing environmental feedbacks threaten his physical survival.[2]

4. Plaintiff alleges that actual emissions and environmental effects attributable to Defendant's own conduct have aggravated his pulmonary, respiratory and immune-system conditions,

---

[1] Inside the Extinction Envelope. DOI: 10.31223/X5H214.

[2] How Climate Change Impacts Humans. DOI: 10.5281/zenodo.23428939.

resulting in recurring acute health crises, physical suffering and medical expenses. The proposed abatement measures are sought only to the extent they are technically feasible and within Defendant's authority or control. Plaintiff seeks an enforceable, site-specific injunction or negotiated consent decree requiring Applied Digital Corp. to deploy the existing technology of Direct Atmospheric Carbon Removal (DACR) which will utilize waste heat recovered from the covered HSDC activities within Defendant's control through a separately engineered heat pump, with independent additional liquid coolant obtained during the process of DACR. Plaintiff notes that recovered-carbon (R-$CO_2$) can be formed into many salable environmentally friendly products such as concrete building materials and polymers employing hundreds of workers (unlike HSDC) and over-compensating for capitol outlay to build dedicated clean-power generation, storage, and interconnection infrastructure to serve the HSCD-DACR-R-CO2 campus. [3]

5. Finally, the requested relief also includes $100,000 in compensatory damages for Plaintiff's physical injuries to date.

## II. PARTIES, JURISDICTION, AND VENUE

6. Plaintiff is a natural person residing in the Grand Junction, Colorado, area since 2019 and appearing pro se. Plaintiff is a citizen of the United States and is domiciled in Colorado, his permanent home, where he intends to remain or return.

7. Plaintiff sues in his individual capacity for his own physical injury; the Climate Deadline Foundation is not a party.

8. Defendant Applied Digital Corp. is identified in the cited public records. Its published company/contact address is 3811 Turtle Creek Boulevard, Suite 2100, Dallas, TX, 75219. The cited corporate record identifies incorporation in Nevada. On information and belief,

---

[3] Anthropogenic Climate Forcing (Possibilities of Immediate Action). DOI: 10.5281/zenodo.23428944. Recovered Data-Centre Heat and Direct Air Capture. DOI: 10.31223/X5VR5N.

based on the headquarters and principal-office materials, its principal place of business is in Texas; that inference concerns the place of direction and control, not a maildrop.[4]

9. Plaintiff invokes subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff is a United States citizen domiciled in Colorado and therefore a citizen of Colorado. Applied Digital Corp. is incorporated in Nevada and, on information and belief, has its principal place of business in Texas; it is therefore a citizen of Nevada and Texas. Complete diversity is alleged between these parties. Plaintiff demands $100,000 in compensatory damages for the physical injury alleged here, exceeding $75,000 exclusive of interest and costs, together with the requested prospective relief.[5]

10. This Court has general personal jurisdiction over Applied Digital Corp. because, on information and belief, its headquarters and principal place of business are in Dallas, Texas, within this District, making it at home in the forum State. This allegation is based on the cited company headquarters materials and corporate records, not solely on a correspondence or registered-agent address. Personal jurisdiction is invoked under Federal Rule of Civil Procedure 4(k)(1)(A), subject to the forum State's jurisdictional law and constitutional due process.[6]

---

[4] Federal subject-matter jurisdiction remains to be completed. 28 U.S.C. § 1331: https://www.law.cornell.edu/uscode/text/28/1331 Additional identity/incorporation records: https://data.sec.gov/submissions/CIK0001144879.json Company identity/address publications: https://www.applieddigital.com/contact ; https://www.applieddigital.com/privacy-policy

[5] 28 U.S.C. § 1332(a)(1) and (c)(1), diversity jurisdiction, amount in controversy and corporate citizenship: https://www.law.cornell.edu/uscode/text/28/1332 . St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–289 (1938), good-faith demand and legal-certainty standard: https://www.law.cornell.edu/supremecourt/text/303/283

[6] Personal-jurisdiction framework: Federal Rule of Civil Procedure 4(k)(1)(A), https://www.law.cornell.edu/rules/frcp/rule_4; Daimler AG v. Bauman, 571 U.S. 117 (2014), https://www.law.cornell.edu/supremecourt/text/11-965; corporate nerve-center distinction, Hertz Corp. v. Friend, 559 U.S. 77 (2010), https://www.law.cornell.edu/supct/html/08-1107.ZS.html. Company/office sources: https://data.sec.gov/submissions/CIK0001144879.json ; https://www.applieddigital.com/contact ; https://www.applieddigital.com/privacy-policy

11. Plaintiff invokes this Court's diversity or alienage jurisdiction, as described in paragraph 9, over his common-law negligence claim and requests adjudication of the physical injury alleged in this Complaint and related prospective relief.[7]

12. Plaintiff invokes venue under 28 U.S.C. § 1391(b)(1) in the Northern District of Texas. This action names a single defendant, Applied Digital Corp.; on the headquarters and jurisdictional facts alleged above, Defendant resides in this District for this action within the meaning of § 1391(c)(2), subject to § 1391(d) for a corporation in a State with multiple districts. The selected project at Ellendale / Dickey County, North Dakota (county carried from selected input) is not alleged to be physically in this District merely because the headquarters is here. Venue is not predicated solely on the clerk's mailing address.[8]

13. Plaintiff asserts common-law negligence arising from Applied Digital Corp.'s own challenged conduct concerning Polaris Forge 1 AI Factory Campus at Ellendale / Dickey County, North Dakota (county carried from selected input) and the resulting physical injury in Colorado. Under Klaxon, a federal court sitting in diversity applies the choice-of-law rules of its forum State. Plaintiff proposes Colorado negligence law because the claimed respiratory injury and its aggravation occurred in Colorado. Alternatively, under Rule 8(d)(2), Plaintiff pleads negligence under the law of the State in which the particular challenged conduct occurred if the forum's conflicts rules select that law. This alternative pleading does not assume that any State's law has already been determined controlling.[9]

---

[7] 28 U.S.C. § 1332, https://www.law.cornell.edu/uscode/text/28/1332; Federal Rule of Civil Procedure 7.1(a)(2), https://www.law.cornell.edu/rules/frcp/rule_7.1; unincorporated-entity citizenship, Siloam Springs Hotel, L.L.C. v. Century Surety Co., https://www.ca10.uscourts.gov/sites/ca10/files/opinions/01019407580.pdf. Case-specific corporate records: https://data.sec.gov/submissions/CIK0001144879.json ; https://data.sec.gov/submissions/CIK0001144879.json

[8] 28 U.S.C. § 1391, venue: https://www.law.cornell.edu/uscode/text/28/1391

[9] Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487 (1941), https://www.law.cornell.edu/supremecourt/text/313/487; alternative pleading, Federal Rule of Civil Procedure 8(d)(2), https://www.law.cornell.edu/rules/frcp/rule_8. Proposed Colorado negligence framework: Colorado Supreme Court civil jury instructions, Chapter 9, https://www.coloradojudicial.gov/sites/default/files/2026-02/Chapter%209.pdf. The forum's conflicts rules, rather than an assumed nationwide negligence rule, determine the governing law.

## III. FACTUAL ALLEGATIONS

### A. Defendant's Project Role, Operations, and Disclosures

14. The selected project is Polaris Forge 1, at Ellendale / Dickey County, North Dakota. Applied Digital reported the first 50 MW phase of Polaris Forge 1 in Ellendale ready for service on October 27, 2025. On October 2, 2026 it reported the second phase of Building 2 ready for service, completing that building's 150 MW and bringing the campus's fully operational critical IT load to 250 MW, toward 400 MW contracted at full buildout.[10]

15. Applied Digital's October 2, 2026 release describes the company as a designer, developer, owner and operator of large-scale data centers. The earlier Polaris Forge 1 ready-for-service release expressly identifies CoreWeave as its hyperscale tenant and describes 400 MW under approximately 15-year leases; neither source establishes the exact title-holding subsidiary. The challenged activities are limited to Defendant's own project decisions and conduct within its actual authority or control; another participant's acts are not attributed to Defendant merely because of a shared project.[11]

16. The project identification below defines the "Covered Facilities" for this Complaint, limited to the identified premises and Defendant's actual activities concerning them:

    a. Project: Polaris Forge 1.

    b. Location: Ellendale / Dickey County, North Dakota.

    c. Scope: the portions and activities of the identified project that Defendant actually undertook or directed in its disclosed role. No unverified parcel, permit number, subsidiary or additional building is included.[12]

---

[10] Project/company publications, cited for the disclosures stated in the text: https://ir.applieddigital.com/news-events/press-releases/detail/133/applied-digital-achieves-ready-for-service-for-phase-1-at ; https://ir.applieddigital.com/news-events/press-releases/detail/161/applied-digital-brings-an-additional-75-mw-of-ai

[11] Project/company publications, cited for the disclosures stated in the text: https://ir.applieddigital.com/news-events/press-releases/detail/161/applied-digital-brings-an-additional-75-mw-of-ai ; https://ir.applieddigital.com/news-events/press-releases/detail/133/applied-digital-achieves-ready-for-service-for-phase-1-at

[12] Project/company publications, cited for the disclosures stated in the text: https://ir.applieddigital.com/news-events/press-releases/detail/133/applied-digital-achieves-ready-for-service-for-phase-1-at ; https://ir.applieddigital.com/news-events/press-releases/detail/161/applied-digital-brings-an-additional-75-mw-of-ai

17. Applied Digital describes Polaris Forge 1 as using its proprietary liquid-cooling and power-distribution designs, with near-zero water consumption. Its design article describes direct liquid-to-liquid cooling and locating campuses near power generation and renewable sources; those are design/strategy statements rather than a measured campus emissions inventory.[13]

18. The reviewed materials do not establish a site-specific annual electricity-consumption total or an annual percentage increase for the Covered Facilities. Announced power capacity, future load and corporate energy totals are not substituted for measured site consumption.[14]

19. Applied Digital's Polaris Forge 1 release describes access to renewable power, and its design article describes selecting locations adjacent to renewable generation such as wind farms. Neither establishes a quantified clean-energy procurement target or a measured renewable percentage for this campus.[15]

20. Plaintiff alleges that actual releases attributable to Defendant's activities concerning the Covered Facilities contribute to atmospheric accumulation, environmental warming and regional respiratory hazards. The selected project's location, operating status and Defendant's actual role limit that allegation; a measured site-specific discharge is not inferred from an announcement, design capacity or companywide inventory.

21. Applied Digital's Polaris Forge 1 release describes access to renewable power, and its design article describes selecting locations adjacent to renewable generation such as wind farms.

---

[13] Project/company publications, cited for the disclosures stated in the text: https://ir.applieddigital.com/news-events/press-releases/detail/133/applied-digital-achieves-ready-for-service-for-phase-1-at ; https://www.applieddigital.com/insights/different-by-design-how-applied-digital-is-redefining-data-center-infrastructure

[14] Project/company publications, cited for the disclosures stated in the text: https://ir.applieddigital.com/news-events/press-releases/detail/133/applied-digital-achieves-ready-for-service-for-phase-1-at ; https://ir.applieddigital.com/news-events/press-releases/detail/161/applied-digital-brings-an-additional-75-mw-of-ai ; https://www.applieddigital.com/insights/different-by-design-how-applied-digital-is-redefining-data-center-infrastructure

[15] Project/company publications, cited for the disclosures stated in the text: https://ir.applieddigital.com/news-events/press-releases/detail/133/applied-digital-achieves-ready-for-service-for-phase-1-at ; https://www.applieddigital.com/insights/different-by-design-how-applied-digital-is-redefining-data-center-infrastructure

Neither establishes a quantified clean-energy procurement target or a measured renewable percentage for this campus.[16]

22. On information and belief, Plaintiff challenges Applied Digital Corp.'s own design, development, computing, procurement or emissions-management decisions to the extent actually undertaken or directed in its disclosed role. No undisclosed subsidiary relationship or authority over another project participant is presumed.

23. Plaintiff alleges that actual and avoidable atmospheric releases attributable to Defendant's conduct contribute to environmental conditions that aggravate respiratory illness. That is Plaintiff's causation allegation, not a measured allocation of his injury to a particular source, nor a claim that a proposed facility was already emitting.

**B. Plaintiff's Physical Injuries and Medical Harm**

24. At all times relevant to this action, Plaintiff Christian Robert Komor has suffered from pre-existing, clinical pulmonary vulnerabilities, including reactive airway disease, severe asthma, and hyper-reactive immune-system sensitivities.

25. Between 2019 and 2026, Plaintiff suffered severe, progressive, and debilitating aggravation of his pre-existing pulmonary and immune conditions as a direct, foreseeable, and proximate result of the atmospheric degradation, ozone precursor enrichment, and fine particulate loading generated and contributed to by Defendant's unmitigated operations.

26. Defendant's emissions repeatedly triggered acute, life-threatening bronchospasms, severe airway inflammation, and acute dyspnea, resulting in:

   a. Multiple emergency hospital admissions and urgent clinical interventions;

   b. Continuous, specialized treatment under the ongoing care of a panel of four board-certified clinical immunologists and pulmonologists;

   c. High-dose oral and inhaled corticosteroid regimens and emergency bronchodilator therapy; and

---

[16] Project/company publications, cited for the disclosures stated in the text: https://ir.applieddigital.com/news-events/press-releases/detail/133/applied-digital-achieves-ready-for-service-for-phase-1-at ; https://www.applieddigital.com/insights/different-by-design-how-applied-digital-is-redefining-data-center-infrastructure

d. Episodes of acute oxygen desaturation and physical collapse following ambient outdoor exposure.

27. As an illustrative example of this recurring impairment, routine outdoor physical exertion routinely induced debilitating respiratory distress, rendering Plaintiff physically incapacitated, struggling severely for breath, and unable to sustain ordinary outdoor movement or employment tasks.

28. As a direct and proximate result of Defendant's ongoing private nuisance and negligent acts and omissions, Plaintiff has suffered concrete, substantial bodily injuries, intense physical pain and mental suffering, substantial out-of-pocket medical expenses, loss of occupational and physical capacity, and severe deprivation of the ordinary physical comfort and peaceful enjoyment of life.

**C. Foreseeability of Regional Atmospheric Harm and Induced Respiratory Injury**

29. At all times relevant to this action, the causal relationship between expanding industrial greenhouse-gas emissions, localized ambient air warming, and the severe aggravation of chronic human respiratory illness was widely established, scientifically verified, and known to Defendant Applied Digital Corp..

30. Well-established scientific consensus, including published findings of the Intergovernmental Panel on Climate Change ("IPCC"), confirms that atmospheric greenhouse-gas accumulation drives compound regional environmental hazards—specifically lengthening wildfire fire seasons, increasing ambient ground-level ozone formation, and escalating particulate air pollution.

31. Peer-reviewed atmospheric and epidemiological research has established that:

a. Anthropogenic warming has nearly doubled the forest area burned by regional wildfires across the Western United States, generating pervasive and dense plumes of fine particulate matter (PM2.5);

b. Regional warming accelerates atmospheric photochemical reactions, systematically increasing ambient ground-level ozone concentrations during peak operating seasons; and

c. Regional climate shifts have lengthened North American airborne pollen seasons by approximately twenty days while significantly increasing aeroallergen concentrations.

32. Fine particulate matter (PM2.5), elevated ground-level ozone, and concentrated thermal exhaust plumes represent potent, acute pulmonary irritants that foreseeably induce severe bronchospasms, cellular lung inflammation, and disabling exacerbations in individuals with pre-existing reactive airway disease and allergic vulnerabilities.

33. Applied Digital's Polaris Forge 1 release describes access to renewable power, and its design article describes selecting locations adjacent to renewable generation such as wind farms. Neither establishes a quantified clean-energy procurement target or a measured renewable percentage for this campus.[17]

34. Plaintiff alleges that Defendant failed to take reasonable precautions against avoidable atmospheric harm within the activities it actually undertook or directed. This allegation is limited by the disclosed project status and does not assert completed operations before the supported operating period or assume that proposed mitigation was technically available at every date.

35. It was entirely foreseeable to a reasonable operator in Defendant's position that adding massive, unscrubbed thermal plumes and combustion byproducts to an already stressed regional airshed would compound ambient particulate and ozone hazards, directly resulting in acute respiratory crises for vulnerable individuals residing in the downwind impact zone, including Plaintiff.

36. **(a) Point of Agency Loss.** Plaintiff alleges that the Point of Agency Loss (POAL) can now be estimated mathematically. POAL denotes the point of no further effective human actionability: the threshold beyond which even a fully deployed portfolio of First Tier Interventions (FTI), including Direct Atmospheric Carbon Removal (DACR), can no longer arrest the climate–ecological degradation and extinction process.

---

[17] Project/company publications, cited for the disclosures stated in the text: https://ir.applieddigital.com/news-events/press-releases/detail/133/applied-digital-achieves-ready-for-service-for-phase-1-at ; https://www.applieddigital.com/insights/different-by-design-how-applied-digital-is-redefining-data-center-infrastructure

**(b) Mathematical formulation.** Let $U(t)$ be the set of feasible interventions that remain capable of averting the specified cascade at time $t$. The threshold is defined as follows:

$$\boxed{t_{\mathrm{POAL}} = \inf\{t \geq 0 : U(t) = \emptyset\}}$$

This defines $t_{\mathrm{POAL}}$ as the earliest time at which no effective, feasible intervention remains. If that set never becomes empty, then $t_{\mathrm{POAL}} = +\infty$.

**(c) First Tier Interventions.** FTI include the relief sought in this Complaint: DACR integrated with hyperscale data centers (HSDC) and uses for recovered carbon dioxide (R-$CO_2$). The complementary interventions are methane suppression; ocean alkalinity enhancement (OAE); stratospheric aerosol injection (SAI); and coral resilience and marine conservation. A clean-energy foundation supports the entire portfolio.

**(d) Projected limits and urgency.** Plaintiff's first-order intervention-portfolio assessment assigns a 15–20% prospect of avoiding POAL under its best-effort deployment assumptions, combining estimated physical potential with deployment readiness. This assumption-dependent diagnostic assessment is developed in Plaintiff's Extinction Envelope analysis. It underscores Plaintiff's allegation that delay compounds the danger. The relief sought here is directed to Applied Digital Corp.'s covered activities and the site-specific emissions-control and carbon-removal measures set out in the Prayer for Relief.[18]

**A model average is not a safety guarantee**

37. The historical sea-ice comparison examined in Plaintiff's Least Drama manuscript found a September Arctic decline of 7.8 ± 0.6% per decade during 1953–2006, against an AR4 multi-model mean of 2.5 ± 0.2% per decade, approximately a threefold discrepancy.[19]

---

[18] Portfolio estimate: Komor, Inside the Extinction Envelope, intervention-portfolio assessment and "Limits and disclosure," https://doi.org/10.31223/X5H214 . Independent tipping-point context, not the source of the 15–20% estimate: Armstrong McKay et al. (2022), Exceeding 1.5°C global warming could trigger multiple climate tipping points, Science 377, eabn7950, https://doi.org/10.1126/science.abn7950

[19] Komor, Erring on the Side of Least Drama: Evaluating Claims of Conservative Bias in Climate Risk Assessment. DOI: https://doi.org/10.5281/zenodo.23428086 . Repository: https://zenodo.org/records/23428086 Stroeve, J., Holland, M. M., Meier, W., Scambos, T., and Serreze, M. (2007), Arctic sea ice decline: Faster than forecast, Geophysical Research Letters 34, L09501, DOI: https://doi.org/10.1029/2007GL029703 . Historical simulation comparison: https://onlinelibrary.wiley.com/doi/abs/10.1029/2007GL029703

38. That documented discrepancy and the risks of interacting feedbacks require consideration of credible severe outcomes in assessing continued emissions; a central projection is not a ceiling on potential harm.

**IV. FIRST CLAIM FOR RELIEF (Negligence / Gross Negligence)**

39. Plaintiff incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

40. Plaintiff alleges that Applied Digital Corp., in undertaking its own affirmative design, engineering, construction, computing, power-procurement or operating activities concerning Polaris Forge 1 at Ellendale / Dickey County, North Dakota, owed reasonable care against creating foreseeable risks of physical injury. This asserted duty is limited to Defendant's actual role and control, not another participant's conduct.

41. The scope of Defendant's duty is governed by standard common-law principles of reasonable care, defined by the high foreseeability of severe respiratory injury resulting from concentrated particulate and thermal atmospheric loading, the known availability of industrial mitigation technologies, and the gravity of the resulting bodily harm.

42. Defendant possessed actual and constructive knowledge that expanding its computing operations without on-site emissions scrubbing or closed-loop thermal recapture would foreseeably degrade ambient air quality and trigger acute, disabling respiratory exacerbations in individuals with pre-existing pulmonary vulnerabilities.

43. Defendant breached its duty of reasonable care by:

   a. Operating stationary generation and high-density computing loads with avoidable atmospheric discharges;

   b. Discharging unmitigated thermal exhaust plumes directly into the regional airshed rather than deploying available closed-loop heat-recovery systems;

   c. Failing to implement carbon-aware computational throttling during periods of elevated atmospheric stress and high ambient particulate concentrations; and

   d. Prioritizing capital cost externalization over available point-source emissions-abatement interfaces.

44. Defendant's breaches were committed willfully, knowingly, or with gross negligence and conscious disregard for the health and physical well-being of downwind residents and vulnerable individuals.

45. As a direct, foreseeable, and proximate result of Defendant's breaches, Plaintiff suffered acute, severe, and repeated physical aggravation of his chronic asthma and immune-system illnesses, requiring emergency medical interventions, extensive specialist treatment, physical suffering, and substantial economic damage.

**V. PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Christian Robert Komor respectfully requests that this Court enter judgment in his favor and against Defendant Applied Digital Corp., and grant the following relief:

A. An award of compensatory damages in the amount of $100,000 for bodily injury, medical expenses, physical pain, and noneconomic harm incurred to date;

B. Entry of a preliminary and permanent injunction ordering Defendant Applied Digital Corp. to abate proven ongoing or sufficiently imminent atmospheric hazards attributable to its own activities concerning Polaris Forge 1 at Ellendale / Dickey County, North Dakota, to the extent of Defendant's authority or control, by:

1. Submitting, within ninety (90) days of the Court's order, a certified engineering audit of all direct and operational emissions, recoverable waste heat, and cooling-system discharges at the covered facilities;

2. Submitting, within one hundred eighty (180) days, an enforceable compliance plan to eliminate unmitigated atmospheric venting through the installation of closed-loop waste-heat recovery, mechanical heat pumps, and verifiable point-source emissions-abatement interfaces; and

3. Achieving full operational compliance with all verified abatement requirements within twenty-four (24) months of the entry of the Court's decree;

C. In the alternative, entry of an enforceable, court-supervised Consent Decree embodying equivalent mandatory emissions-abatement, heat-recapture, and verifiable net-removal milestones;

D. An award of allowable filing fees, statutory interest, and taxable court costs; and

E. Such other and further legal or equitable relief as this Court deems just and proper.

**VI. JURY DEMAND**

Plaintiff Christian Robert Komor hereby demands a trial by jury on all issues and claims so triable as a matter of right.

Respectfully submitted,

Dated: 11-09-2026

Signature: ______________________

Christian Robert Komor, Plaintiff pro se
246 Hollyberry Way
Fruita, CO 81521
Telephone: 800-884-0824
christiankomor@k4gov.com

# JS 44 (Rev. 03/24) CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)

**I. (a) PLAINTIFFS**
Christian Robert Komor
(b) County of Residence of First Listed Plaintiff:
(Except in U.S. Plaintiff Cases)
**(c) Attorneys (Firm Name, Address, and Telephone Number)**
Christian R. Komor, pro se | 800-884-0824
246 Hollyberry Way, Fruita, CO 81521
christiankomor@k4gov.com

**DEFENDANTS**
Applied Digital Corp.
County of Residence of First Listed Defendant:
(In U.S. Plaintiff Cases Only)
NOTE: In land condemnation cases, use the location of the tract of land involved.
**Attorneys (If Known):**

RECEIVED
NOV 18 2026
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

3-26CV4065-K

**II. BASIS OF JURISDICTION**
(Place an "X" in One Box Only)
[ ] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[X] 4 Diversity (Indicate Citizenship in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**
For Diversity Cases Only. Mark one box for Plaintiff and one for Defendant.
**PTF / DEF**
1 [ ] / [ ] Citizen of This State
2 [X] / [ ] Citizen of Another State
3 [ ] / [ ] Citizen or Subject of a Foreign Country
4 [ ] / [X] Incorporated or Principal Place of Business in This State
5 [ ] / [ ] Incorporated and Principal Place of Business in Another State
6 [ ] / [ ] Foreign Nation

**IV. NATURE OF SUIT (Place an "X" in One Box Only)**

**CONTRACT**
[ ] 110 Insurance
[ ] 120 Marine
[ ] 130 Miller Act
[ ] 140 Negotiable Instrument
[ ] 150 Recovery of Overpayment & Enforcement of Judgment
[ ] 151 Medicare Act
[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
[ ] 153 Recovery of Overpayment of Veteran's Benefits
[ ] 160 Stockholders' Suits
[ ] 190 Other Contract
[ ] 195 Contract Product Liability
[ ] 196 Franchise
**REAL PROPERTY**
[ ] 210 Land Condemnation
[ ] 220 Foreclosure
[ ] 230 Rent Lease & Ejectment
[ ] 240 Torts to Land
[ ] 245 Tort Product Liability
[ ] 290 All Other Real Property

**TORTS: PERSONAL INJURY**
[ ] 310 Airplane
[ ] 315 Airplane Product Liability
[ ] 320 Assault, Libel & Slander
[ ] 330 Federal Employers' Liability
[ ] 340 Marine
[ ] 345 Marine Product Liability
[ ] 350 Motor Vehicle
[ ] 355 Motor Vehicle Product Liability
[X] 360 Other Personal Injury
[ ] 362 Personal Injury - Medical Malpractice
**CIVIL RIGHTS**
[ ] 440 Other Civil Rights
[ ] 441 Voting
[ ] 442 Employment
[ ] 443 Housing/Accommodations
[ ] 445 Amer. w/Disabilities - Employment
[ ] 446 Amer. w/Disabilities - Other
[ ] 448 Education

**PERSONAL INJURY**
[ ] 365 Personal Injury - Product Liability
[ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
[ ] 368 Asbestos Personal Injury Product Liability
**PERSONAL PROPERTY**
[ ] 370 Other Fraud
[ ] 371 Truth in Lending
[ ] 380 Other Personal Property Damage
[ ] 385 Property Damage Product Liability
**PRISONER PETITIONS**
[ ] 463 Alien Detainee
[ ] 510 Motions to Vacate Sentence
[ ] 530 General
[ ] 535 Death Penalty
[ ] 540 Mandamus & Other
[ ] 550 Civil Rights
[ ] 555 Prison Condition
[ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE / PENALTY**
[ ] 625 Drug Related Seizure of Property 21 USC 881
[ ] 690 Other
**LABOR**
[ ] 710 Fair Labor Standards Act
[ ] 720 Labor/Management Relations
[ ] 740 Railway Labor Act
[ ] 751 Family and Medical Leave Act
[ ] 790 Other Labor Litigation
[ ] 791 Employee Retirement Income Security Act
**IMMIGRATION**
[ ] 462 Naturalization Application
[ ] 465 Other Immigration Actions

**BANKRUPTCY**
[ ] 422 Appeal 28 USC 158
[ ] 423 Withdrawal 28 USC 157
**INTELLECTUAL PROPERTY**
[ ] 820 Copyrights
[ ] 830 Patent
[ ] 835 Patent - Abbreviated New Drug Application
[ ] 840 Trademark
[ ] 880 Defend Trade Secrets Act of 2016
**SOCIAL SECURITY**
[ ] 861 HIA (1395ff)
[ ] 862 Black Lung (923)
[ ] 863 DIWC/DIWW (405(g))
[ ] 864 SSID Title XVI
[ ] 865 RSI (405(g))
**FEDERAL TAX SUITS**
[ ] 870 Taxes (U.S. Plaintiff or Defendant)
[ ] 871 IRS-Third Party 26 USC 7609

**OTHER STATUTES**
[ ] 375 False Claims Act
[ ] 376 Qui Tam (31 USC 3729(a))
[ ] 400 State Reapportionment
[ ] 410 Antitrust
[ ] 430 Banks and Banking
[ ] 450 Commerce
[ ] 460 Deportation
[ ] 470 Racketeer Influenced and Corrupt Organizations
[ ] 480 Consumer Credit (15 USC 1681 or 1692)
[ ] 485 Telephone Consumer Protection Act
[ ] 490 Cable/Sat TV
[ ] 850 Securities/Commodities/Exchange
[ ] 890 Other Statutory Actions
[ ] 891 Agricultural Acts
[ ] 893 Environmental Matters
[ ] 895 Freedom of Information Act
[ ] 896 Arbitration
[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
[ ] 950 Constitutionality of State Statutes

**V. ORIGIN (Place an "X" in One Box Only)**
[X] 1 Original Proceeding [ ] 2 Removed from State Court [ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened [ ] 5 Transferred from Another District [ ] 6 Multidistrict Litigation - Transfer
[ ] 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite U.S. civil statute (do not cite jurisdictional statutes unless diversity): 28 U.S.C. 1332(a)(1)
Brief description of cause: Climate-related respiratory injury; emissions-control and carbon-removal relief

**VII. REQUESTED IN COMPLAINT**
[ ] Class Action under Rule 23, F.R.Cv.P. DEMAND $ 100,000 JURY DEMAND: [X] Yes [ ] No

**VIII. RELATED CASE(S) IF ANY: JUDGE:** ____________ **DOCKET NUMBER:** ____________

DATE: ____________ SIGNATURE OF ATTORNEY OF RECORD: ____________________

**FOR OFFICE USE ONLY**
RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

PRESS FIRMLY TO SEAL

PRIORITY MAIL
FLAT RATE ENVELOPE
POSTAGE REQUIRED

UNITED STATES POSTAL SERVICE | PRIORITY MAIL®

UNITED STATES POSTAL SERVICE. Retail

P

US POSTAGE PAID
$13.90
Origin: 81501
11/10/26
0738340501-55

PRIORITY MAIL®

0 Lb 10.40 Oz
RDC 01

EXPECTED DELIVERY DAY: 11/16/26

C001

SHIP TO:
STE 1452
1100 COMMERCE ST
DALLAS TX 75242-1310

USPS TRACKING® #
9505 5110 5762 6314 4751 61

tions apply).*
ny international destinations.
is required.
xclusions see the
d limitations of coverage.

To schedule free Package Pickup, scan the QR code.
USPS.COM/PICKUP

Christian R. Komor
246 Hollyberry Way
Fruita, CO 81521

MAILROOM
NOV 18 2026
RECEIVED - 7

TO:
Clerk, U.S. District Court
Northern District of Texas
Dallas Division
1100 Commerce Street
Room 1452
Dallas, TX 75242